Stephen W. HARTUNG, Plaintiff-Respondent,

v.

Eleanor Ann HARTUNG, Defendant-Appellant-Petitioner.

Supreme Court

*No. 79–1635. Argued April 27, 1981.—Decided June 2, 1981.*

(Also reported in 306 N.W.2d 16.)

For the appellant-petitioner there was a brief (in court of appeals) by *Hugh R. Braun* and *Godfrey & Trump* of Milwaukee, and oral argument by *Mr. Braun.*

For the respondent there was a brief (in court of appeals) and oral argument by *Milton R. Bordow* of Milwaukee.

HEFFERNAN, J. This is a review of an unpublished decision of the court of appeals dated July 16, 1980, affirming a divorce judgment of the circuit court for Milwaukee county. Although the notice of appeal placed in issue all portions of the judgment except that which granted Eleanor Ann Hartung a divorce on the grounds of a voluntary separation of the parties for a period of one year, the only question pursued by the parties is the propriety of the award of maintenance and the period for which payments are to be made.

As in the court of appeals, the principal issue on this review is whether the trial court abused its discretion when it ordered Stephen Hartung to pay Eleanor Hartung maintenance in the amount of $200 a month and provided that those payments would cease after eighteen months. We conclude that, in so ordering, the trial court abused its discretion; and we, therefore, vacate that portion of the judgment and remand the cause to the trial court for further consideration and for the exercise of discretion pursuant to the standards of sec. 247.-26(1), Stats. 1977.[1]

---

[1] Now, as amended, sec. 767.26, Stats. 1979–80:

"767.26 **Maintenance payments.** Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 767.02(1)(g) or (j), the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time after considering:

"(1) The length of the marriage.

"(2) The age and physical and emotional health of the parties.

"(3) The division of property made under s. 767.255.

"(4) The educational level of each party at the time of marriage and at the time the action is commenced.

"(5) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

"(6) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

"(7) The tax consequences to each party.

"(8) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

The record shows that the parties were married in 1966, and at the time of the divorce hearing on May 15, 1979, the couple had three children, aged nine, seven, and three. The marital estate of approximately $90,000 was divided equally. Neither party objects to that division. The wife was awarded the home, with an equity of approximately $40,000, and received $1,100 in cash, a sum which was determined to be her portion of a federal income tax refund. Stephen was awarded title to a rental duplex in Milwaukee and a lake lot in Oneida county. He also was awarded $7,600 in cash. Items of personal property were also awarded to Stephen and Eleanor; and, as a result, the marital property was divided with approximate equality. Eleanor was given custody of the children.

Eleanor's expenses to maintain the household and to care for the children were found to be $1,064.12 per month. Two hundred seven dollars of this sum was needed to pay the mortgage, taxes, insurance, and related expenses on the homestead awarded to her. The reasonableness of her expenses was not disputed.

Prior to the marriage in 1966, Eleanor had two years of college education and worked for a short time as a clerk-typist. She earned $3,000 the year they were married. However, she has not been employed since, and the record shows that, if she were able to get a job, her present earning capacity would be limited. In addition, she wishes to remain at home to take care of the children while they are small.

Stephen is an electrician, who earned $36,000 in 1977 and $28,000 in 1978. In 1979, his final earning figure

---

"(9) The contribution by one party to the education, training or increased earning power of the other.

"(10) Such other factors as the court may in each individual case determine to be relevant."

was not available, but it was estimated to be about $29,000, or a current net pay of $1,678 per month.

Support for the children was set at $450 per month and is not challenged on review. Maintenance payments were awarded to Eleanor in the amount of $200 per month for a period limited to eighteen months.

Under the judgment filed with the clerk of court on September 13, 1979, the maintenance award was to terminate on November 1, 1980. Although the judgment recited that the division of estate was in "consideration of a full and final division of marital estate of the parties and in lieu of maintenance," maintenance was in fact ordered.

Eleanor Hartung's attorney asserted in the court of appeals that the meager and limited maintenance award would require Eleanor Hartung to immediately go to work full time and would deprive very young children of a mother's care. He points out the inequitableness of the maintenance award when that sum, $200, plus the $450 for child support, amounts to only $650, while it is undisputed that the reasonable living expenses for Eleanor and the children at the time of the divorce were $1,064.12 per month. Other than the award of $1,100—the income tax refund, Eleanor has no cash assets whatsoever. It is undisputed that ordered support and maintenance payments do not cover the minimum expenses of maintaining the household and supporting the children. The trial judge was fully apprised of this shortfall in income for Eleanor and the children. However, his only recognition of the problem appears in his oral statement from the bench. He said:

"Now we have the question which, I think, really brought everybody here today more than anything, of what to do with alimony or maintenance, as it is now known. We have a recommendation from the guardian ad litem that maintenance of some kind be instituted

for a limited period until, I think she said, August of 1981, the theory being that Mrs. Hartung with children —the children would all be older then and she can start thinking about being employed, and I think she certainly should. I don't think she would want to sit around the rest of her life. My God, she will turn into a vegetable if she did that anyhow. So she ought to start thinking about some kind of a retraining program. But in order to facilitate that I am going to provide that there be limited maintenance for a period of 18 months at the sum of $200 a month commencing with this month, May of 1979, and running for eighteen months thereafter, and it will be terminated at the expiration of eighteen months. And this will all be in consideration of a full and final division of the marital estate of these parties which the court has attempted to make as close as possible with a 50–50 division . . . ."

The court of appeals recognized in its opinion that, under the maintenance and support order, Eleanor Hartung would have to immediately seek employment to meet her acknowledged monthly expenses. The court of appeals correctly observed that, as a matter of law:

"[A]n important consideration of maintenance is that custodial mothers should be free to give primary attention to their maternal responsibilities, and a corollary duty of divorced husbands is that they support the family in the manner to which the family is accustomed according to their ability to pay."

The court of appeals asserted, however, that there was no support in the law for the proposition that a custodial mother can demand continuing maintenance. For that proposition—that continuing maintenance is not a legal entitlement—it relied upon sec. 247.26(1)(f), Stats. 1977. This subsection of the statutes states one of the considerations which a trial court shall use in determining whether maintenance payments are to be awarded. It provides that the court shall consider:

"(f) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal."

This guide to trial court discretion requires the court to determine whether it is feasible for the party seeking maintenance to become self supporting. If that conclusion is reached, the determination should then be made that maintenance payments shall continue until that goal of self support is achieved. The provision does not stand for the proposition that a spouse cannot qualify for maintenance payments over an extended or indefinite period.

The court of appeals, after correctly reciting that the award of maintenance was within the sound discretion of the court and must be upheld unless an abuse of discretion can be shown, went on to say:

"It is the ideal to have a divorced mother stay in the home and live under terms she was accustomed to prior to the divorce. In some cases, however, it is not realistic. Eleanor does not dispute Stephen's net income figure determined by the trial court at $1,160 per month.[2] Given that income figure, it is unrealistic to assume that two households could be sustained at the financial level the parties to this divorce maintained when there was only one household.

". . . . It is obvious that the award of maintenance and support is mathematically inadequate, but this inadequacy is a realistic circumstance that is consistent with the financial situation of this family as well as most families separated by divorce."

It is noteworthy that the court of appeals did not address the problem posed on the appeal—whether mainte-

[2] The court of appeals on August 8, 1980, corrected the monthly income figure to show that Stephen's income at the time of the divorce was that found by the trial court—$1,678. It stated, however, that the error did not affect its decision.

nance payments should be discontinued after eighteen months. It only determined that, in its judgment, a maintenance payment in excess of $200 a month would not be realistic in light of Stephen's income. Accordingly, none of the reasoning of the court of appeals either questions or sustains the limitation period established for the payment of maintenance. If the financial considerations relied upon by the court of appeals are relevant, there is no reason whatsoever for determining that what was realistic and affordable by Stephen for the period of eighteen months would not have been appropriate and affordable over a protracted period of time or until it was demonstrated that Eleanor was or should feasibly be self supporting. That question—the period for which maintenance is to be paid—was never addressed.

The court of appeals recognized that a custodial mother of small children should be free to give primary attention to her maternal responsibilities. *Johnson v. Johnson,* 78 Wis.2d 137, 145, 254 N.W.2d 198 (1977). It also recognized the duty of Stephen to support the family in the manner to which they had been accustomed during the marriage. *Radandt v. Radandt,* 30 Wis.2d 108, 112, 140 N.W.2d 293 (1966). True, the extent of that duty is tempered by the responsible spouse's ability to pay. *Bussewitz v. Bussewitz,* 75 Wis.2d 78, 82, 248 N.W.2d 417 (1977).

In the instant case, the court of appeals, by its calculations, affirmed the current ability of Stephen Hartung to pay at least $200 per month in maintenance to Eleanor Hartung. It would appear then that, without some reason stated by the trial court for discontinuing the maintenance payments after an eighteen-month period, the court of appeals was obliged to find that the time limitation imposed by the trial court constituted an abuse of discretion.

We recognize, as did the court of appeals, that the test of the amount or time limitation for the payment of maintenance is a matter of trial court discretion. *Dean v. Dean,* 87 Wis.2d 854, 877, 275 N.W.2d 902 (1979). However, this court has frequently pointed out that the exercise of discretion is not the equivalent of unfettered decision-making. *McCleary v. State,* 49 Wis.2d 263, 182 N.W.2d 512 (1971). A discretionary determination, to be sustained, must demonstrably be made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law. Additionally, and most importantly, a discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination. It is recognized that a trial court in an exercise of its discretion may reasonably reach a conclusion which another judge or another court may not reach, but it must be a decision which a reasonable judge or court could arrive at by the consideration of the relevant law, the facts, and a process of logical reasoning. The record here demonstrates beyond doubt that the trial court in this case failed to articulate and use the discretionary standards which the legislature has set as guidelines for determining an award of maintenance and failed to set forth the facts upon which it relied.

Sec. 247.26(1), Stats. 1977, requires that a court ordering maintenance payments for either a limited or indefinite period[3] consider the length of the marriage, the

---

[3] It is observed that under current statutes and under the statutes applicable to this case, maintenance payments may be made for a definite or indefinite period. *See* sec. 767.26, Stats. Maintenance payments may be revised or altered pursuant to sec. 767.32(1).

age and physical and emotional health of the parties, the distribution of property, the educational level of each party at the time of the marriage and at the time the action is commenced, the earning capacity of the party seeking maintenance, the feasibility that the party seeking maintenance can become self supporting and the length of time in which self support can be achieved, the tax consequences to each party, and any agreements made by the parties concerning arrangements for financial support. The record fails to demonstrate that the court considered any of these factors. The only possible exception showing recognition of a proper criterion for discretion was its statement that the maintenance award was made in "consideration" of the division of the property. The other seven factors, however, were disregarded. It is not enough that the relevant factors upon which discretion could have been based may be found obscurely in the record. If the exercise of discretion is to be upheld, it must be demonstrated on the record that those factors were considered in making the discretionary determination. The only "reasoning" that appears of record to support the maintenance award of $200 for the limited period of eighteen months was the statement:

"I don't think she would want to sit around the rest of her life. My God, she will turn into a vegetable if she did that anyhow. So she ought to start thinking about some kind of a retraining program."

We see nothing in the record that would support the trial court's conclusion that mothers of small children who remain at home and care for them will turn into vegetables. While this court recognizes equality of opportunity of the sexes and recognizes the right of women to exercise their abilities in whatever line of work they choose, basically this is a recognition of the right to

make a choice; and if the circumstances dictate to a woman that the appropriate choice for her is to remain at home to care for small children, that choice, like a career choice, will be respected by this court. The trial court's pronouncement, lacking any basis in the record, cannot be deemed to be a rational determination.

Additionally, the trial court did not give any reason why $200 was an appropriate monthly maintenance payment. This is particularly disturbing in view of the fact that the total initial award for support and maintenance for Eleanor and the three children amounted to less than 40 percent of Stephen Hartung's net income. Moreover the court—although the record made it clear that if Eleanor Hartung was able to secure any employment it would most likely be at low pay—recited no facts, and gave no reason why, after eighteen months, she would be likely to earn enough to support the household for which she was responsible.

The guidelines of sec. 247.26 (1), Stats. 1977, were not addressed by the trial court. The eighteen-month period selected by the court is, on its face, arbitrary. There are no facts of record upon which the trial court could have concluded that eighteen months was a reasonable period within which Eleanor Hartung could better her opportunity for gainful employment or within which she could reasonably dispense with maintenance payments.

Moreover, although tax considerations were called to the attention of the court by Eleanor Hartung's attorney, the trial court gave no indication that it considered the tax implications of the financial arrangements. There was no apparent attempt to structure maintenance and support payments in such a manner that

they would maximize the tax advantages of Stephen Hartung and, therefore, possibly make possible greater support and maintenance payments available to Eleanor Hartung and the children. Because we conclude that the record demonstrates almost a total failure to utilize the legislatively mandated criteria of sec. 247.26(1), Stats. 1977, we find that the court's order awarding maintenance constituted an abuse of discretion, both in respect to the amount of the award and in the time limitation imposed. Accordingly, we reverse the decision of the court of appeals and remand the cause to the trial court for further consideration and for the exercise of discretion in accordance with the statutorily established guidelines of sec. 247.26(1), Stats. 1977. Upon remand, additional evidence may be adduced to guide the court's discretion.

*By the Court.*—Decision reversed; judgment of the circuit court vacated in part; and cause remanded to the circuit court for further proceedings.