Darlene E. BAHR, Plaintiff-Appellant-Petitioner,

v.

Robert D. BAHR, Defendant-Respondent.

Supreme Court

*No. 80–1394. Argued March 29, 1982.—Decided April 27, 1982.*

(Also reported in 318 N.W.2d 391.)

For the plaintiff-petitioner there were briefs (in court of appeals) by *Clifford K. Meldman* and *Meldman & Meldman, S.C.,* of Milwaukee, and oral argument by *Clifford K. Meldman.*

For the defendant-respondent there was a brief (in court of appeals) and oral argument by *Jack C. Horth* of Milwaukee.

WILLIAM G. CALLOW, J.  This is a review of a July 8, 1981, unpublished decision of the court of appeals which reversed and remanded the July 2, 1980, decision of Waukesha county circuit court, Judge Robert T. McGraw, awarding the plaintiff, Mrs. Darlene Bahr, certain cash, securities, $1,250 per month for fifteen years in property division, and $1,500 per month permanent maintenance in this divorce action.  While we agree with the decision of the court of appeals directing the trial court to reconsider the division of estate and the maintenance award in light of the errors in computation and omissions, we disagree with the court of appeals' conclusion that the maintenance award was not so inadequate as to constitute an abuse of discretion.  Under the facts and circumstances of this case, we conclude the maintenance award was unreasonably low, and, therefore, constitutes an abuse of discretion.

The parties to the present action were married twenty-four years prior to their divorce on July 30, 1979.  They have four adult daughters who live outside of the home.  Mrs. Bahr was fifty years of age at the time of the divorce, and she testified she was having medical problems, including arthritis and back ailments, which have allegedly interfered with her present ability to work for extended periods of time.  Dr. Bahr was fifty-one years of age at the time of the divorce, and he testified he was

in good health. Mrs. Bahr is currently living in California, and Dr. Bahr continues to reside in this state.

Mrs. Bahr has a college degree from the University of Minnesota, qualifying her to obtain employment as a dietician. She was employed part time as a dietary consultant between 1973 and 1979, earning up to $5,000 annually. She has not been employed since May of 1979. Except for the dietary consultant work, Mrs. Bahr devoted her time to caring for the children and home during the marriage.

Dr. Bahr is a physician specializing in the field of radiology. He is associated with Radiologist Association Limited, a service corporation owned by the participating physicians. Dr. Bahr's gross income for the year 1978 was $331,888 and in 1979 was $313,155. In addition, his service corporation paid the maximum statutorily allowed amount into his pension fund. The trial court found that in September of 1979, Dr. Bahr had a vested interest of approximately $400,000 in the fund.

The trial court valued the marital estate at $1,108,024. Out of this gross estate the trial court awarded Mrs. Bahr: $254,500 in cash and securities; $225,000 to be paid at a rate of $1,250 per month for a period of fifteen years; and $33,779.40 as contribution toward attorney fees. The trial court determined that "[t]otal division of estate would then amount to $513,279.40 which represents approximately 46 percent of the net estate."

In awarding Mrs. Bahr $1,500 per month permanent maintenance, the trial court concluded:

*"ALIMONY:* The Court in addressing the question of alimony has considered the length of the marriage, the age and physical health of the parties and the distribution of estate between the parties and the budgetary needs of the plaintiff to enable her to live in the manner consistent with her past state in life and the earning capacity

or lack thereof of the plaintiff and the defendant, and the tax consequences to each of the parties herein. Having that in mind the Court will direct that . . . the defendant is to pay to the plaintiff the sum of $1500 per month as and for permanent alimony.

"The Court notes that this would give to the plaintiff a combination monthly income of alimony and property division payments, the total sum of $2750. The plaintiff had asked the monthly payment to meet a budget of $5,750 per month of which $2500 per month was asked to establish a retirement fund.

"The Court has examined the proposed budget and feels that the present awards herein will be adequate to properly maintain the plaintiff."

On appeal, Mrs. Bahr challenged the propriety of the division of the marital estate[1] and the adequacy of the maintenance award. The court of appeals agreed with Mrs. Bahr's arguments and reversed and remanded the

---

[1] Mrs. Bahr advanced the following points contending that the trial court abused its discretion in effecting a proper division of the marital estate: (1) Dr. Bahr's home was erroneously valued at $17,900 rather than $94,900 due to a mathematical error; (2) only $61,000 rather than $71,000 should have been subtracted from Dr. Bahr's pension fund because $10,000 of a loan against the fund had been repaid; (3) the trial court used the face value of the monthly payments over fifteen years instead of the discounted present value of the payments; (4) certain personal property was mistakenly omitted from the marital estate; (5) certain stipulated debts from Doctor to Mrs. Bahr were erroneously omitted from the final judgment; and (6) Mrs. Bahr's attorney fees should not have been included in her portion of the estate but rather paid out of Dr. Bahr's funds.

It is well-established law that an abuse of discretion occurs when the trial court makes an error in computation. *Dean v. Dean,* 87 Wis. 2d 854, 877, 275 N.W.2d 902 (1979).

The court of appeals agreed with Mrs. Bahr's arguments and, accordingly, remanded the case for reconsideration of the property division. We are in full agreement with the court of appeals on this issue, and it will not be further discussed within this opinion.

case for a reconsideration of division of the marital estate. In response to Mrs. Bahr's allegation that the maintenance award was inadequate and an abuse discretion, the court of appeals concluded:

"We do not believe this award is, under the circumstances, so inadequate as to constitute an abuse of discretion. Nevertheless, we direct the trial court to consider whether the alimony award should be modified to reflect the changes in the division of property. While division of the estate and alimony are separate and distinct awards, they cannot be made in a vacuum, and the division of property will affect the need and amount of alimony."

The principal issue before us on this review is whether, under the facts and circumstances of this case, the trial court's maintenance award was so inadequate as to constitute an abuse of discretion. Although the court of appeals held it was not, we disagree and hold that the trial court's award of maintenance in the amount of $1,500 per month was unconscionably low and an abuse of discretion.

We recognize at the outset that the award of maintenance and division of property are within the sound discretion of the trial court. *Vander Perren v. Vander Perren,* 105 Wis. 2d 219, 226–27, 313 N.W.2d 813 (1982); *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981); *Dean v. Dean,* 87 Wis. 2d 854, 877, 275 N.W.2d 902 (1979); *Bussewitz v. Bussewitz,* 75 Wis. 2d 78, 89–90, 248 N.W.2d 417 (1977). This court has repeatedly endorsed this sound legal principle because the weight of the evidence and credibility of the witnesses is best measured by the trial court. *See: Perrenoud v. Perrenoud,* 82 Wis. 2d 36, 42, 260 N.W.2d 658 (1978). As we have recently cautioned, however, "the exercise of discretion is not the equivalent of unfettered decision-

making . . . . [A] discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Hartung,* 102 Wis. 2d at 66. Based upon the record before us, we conclude that the trial court, while stating the sec. 247.26, Stats. 1977, factors in awarding maintenance, did not properly illuminate the reasoning which produced the resulting award.

The trial court in its findings of fact and conclusions of law noted that this action arose prior to the legislature's adoption of the Divorce Reform Act. The trial court's conclusion that the factors enumerated in the 1977 statutes for maintenance and property division were applicable to the action is not challenged.[2] While main-

---

[2] Secs. 247.255 and 247.26, Stats. 1977, provide:

"247.255 **Property division.** Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 247.02(1)(h), the court shall divide the property of the parties and divest and transfer the title of any such property accordingly. A certified copy of the portion of the judgment which affects title to real estate shall be recorded in the office of the register of deeds of the county in which the lands so affected are situated. The court may protect and promote the best interests of the children by setting aside a portion of the property of the parties in a separate fund or trust for the support, maintenance, education and general welfare of any minor children of the parties. Any property inherited by either party prior to or during the course of the marriage shall remain the property of such party and may not be subjected to a property division under this section except upon a finding that refusal to divide such property will create a hardship on the other party or on the children of the marriage, and in that event the court may divest the party of such property in a fair and equitable manner. The court shall presume that all other property except inherited property is to be divided equally between the parties, but may alter this distribution without regard to marital misconduct after considering:

"(1) The length of the marriage.

tenance and property division are separate and distinct awards, we agree with the court of appeals that they cannot be made in a vacuum. *Dean,* 87 Wis. 2d at 878.

"(2) The property brought to the marriage by each party.

"(3) The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.

"(4) The age and physical and emotional health of the parties.

"(5) The contribution by one party to the education, training or increased earning power of the other.

"(6) The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

"(7) The desirability of awarding the family home or the right to live therein for a reasonable period to the party having custody of any children.

"(8) The amount and duration of an order under s. 247.26 granting maintenance payments to either party, any order for periodic family support payments under s. 247.261 and whether the property division is in lieu of such payments.

"(9) Other economic circumstances of each party, including pension benefits, vested or unvested, and future interests.

"(10) The tax consequences to each party.

"(11) Any written agreement made by the parties before or during the marriage concerning any arrangement for property distribution; such agreements shall be binding upon the court except that no such agreement shall be binding where the terms of the agreement are inequitable as to either party. The court shall presume any such agreement to be equitable as to both parties.

"(12) Such other factors as the court may in each individual case determine to be relevant."

"247.26  Maintenance payments.  (1) Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 247.02(1)(g) or (j), the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time after considering:

"(a) The length of the marriage.

*See:* Sec. 247.26(1)(c), Stats. 1977. Thus, although the concepts of maintenance and property division are analytically severable, they are closely related, and the court of appeals was correct in concluding that a substantial error in the property division necessitated reconsideration of the maintenance award in this case.

While we are dealing here with maintenance, a review of the historical development of the division of property serves as a guide in our analysis of the maintenance award. We note that in the 1914 decision in *Gauger v. Gauger,* 157 Wis. 630, 147 N.W. 1075 (1914), the court was of the opinion that "a clear third of the whole [property division] is a liberal allowance to the wife, subject to be increased or decreased according to special circumstances." *Id.* at 633. *Accord, Kronforst v. Kronforst,* 21 Wis. 2d 54, 61, 123 N.W.2d 528 (1963). Justice Robert W. Hansen, commenting on the full text of the *Gauger* decision, fifty-six years later in *Lacey v. Lacey,* 45 Wis. 2d 378, 381, 173 N.W.2d 142 (1970), stated that the oft-repeated one-third dower-type property division allowance to the wife was neither a minimum nor maxi-

"(b) The age and physical and emotional health of the parties.

"(c) The distribution of property made under s. 247.255.

"(d) The educational level of each party at the time of marriage and at the time the action is commenced.

"(e) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

"(f) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

"(g) The tax consequences to each party.

"(h) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has

mum. Justice Hansen cautioned that "the 1914 fountainhead decision seems to us now to stress the starting point too much, the finishing point too little. It is the equitableness of the result reached that must stand the test of fairness on review." *Id.* at 382. Justice Hansen went on to define marriage as a true partnership:

"The division of the property of the divorced parties rests upon the concept of marriage as a shared enterprise or joint undertaking. It is literally a partnership, although a partnership in which contributions and equities of the partners may and do differ from individual case to individual case. In a brief marriage, particularly as to property which the husband brought to the marriage, one third to the wife may be too liberal an allowance. In a long marriage, particularly as to property acquired by the parties during the marriage, a fifty-fifty division may well represent the mutuality of the enterprise. In determining the proportion of contribution by husband and by wife in the acquisition of property, more than economic factors are involved. We do not deal with two people with no more in common than two strangers or business associates. The contribution of a full-time homemaker-housewife to the marriage may well be greater or at least as great as those of the wife required by circumstances or electing by preference to seek and secure outside employment. The formula for division derives from the facts of the individual case." *Id.* at 382–83.

In enacting the current property division statute, the legislature abandoned any dower-type formula in favor of a fifty-fifty presumption, subject to certain exceptions. "The court shall presume that all other property

made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

"(i) Such other factors as the court may in each individual case determine to be relevant."

is to be divided equally between the parties, but may alter this distribution" based upon consideration of the length of the marriage, the age and health of the parties, the earning capacity of the parties, the tax consequences, and various other factors. Sec. 247.255, Stats. 1977. *See: Van Wyk v. Van Wyk,* 86 Wis. 2d 100, 271 N.W.2d 860 (1978). In recent years this court has recognized the partnership concept of marriage, and more recently the legislature has directed that the court shall presume that all other property shall be divided equally between the parties, subject to enumerated considerations.

In determining a maintenance award, trial courts have traditionally looked to the needs and the income producing abilities of the parties. *Besaw v. Besaw,* 89 Wis. 2d 509, 517, 279 N.W.2d 192 (1979) ; *Van Wyk v. Van Wyk,* 86 Wis. 2d at 108, *Czaicki v. Czaicki,* 73 Wis. 2d 9, 18, 242 N.W.2d 214 (1976). But, while trial courts have articulated the statutory factors to be considered in awarding maintenance, these factors have too often been recognized in form and ignored in substance. As exemplified by the instant case, the court stated that it "considered the length of the marriage, the age and physical health of the parties and the distribution of estate between the parties and the budgetary needs of the plaintiff to enable her to live in the manner consistent with her past state in life and the earning capacity or lack thereof of the plaintiff and the defendant, and the tax consequences to each of the parties herein." This, however, falls short of the *reasoned* decision-making we required in *Hartung.* We are left with a nagging question: *Why* is $1,500 per month a proper maintenance award under the facts and circumstances of this case based upon these recited factors ?

In the instant case Mrs. Bahr is to receive an annual maintenance award of $18,000 when Dr. Bahr's annual income exceeds $300,000. Dr. Bahr does not dispute that he has the ability to pay a greater sum. Rather, Dr.

Bahr's attorney argues before us that increasing Mrs. Bahr's award would "reduce her incentive to find a proper mate" or to procure employment of her own. In addressing Dr. Bahr's argument that the award reduces her incentive to procure employment, we note that Mrs. Bahr terminated her part-time employment several months before the divorce was granted. In a case where the parties have a modest amount of income-producing property to divide and a limited income was earned by the party from whom support was sought, the voluntary termination of employment by the party claiming to be dependent, or a refusal of that party to seek and accept available employment, would be a significant factor to be considered by the trial court in awarding maintenance.

With respect to the factors to be considered in awarding maintenance, we note that sec. 247.26(1)(f), Stats. 1977, directs the court to consider the feasibility of the party seeking maintenance to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage. We believe the word "enjoyed" pertains to a situation where the parties had an acceptable standard of living and that the standard should be maintained if, under the facts and circumstances of the situation, such a result can be accomplished without unreasonable hardship to the supporting party. When the dependent party is capable of accepting reasonably available, gainful employment, we do not believe the dependent party can avoid such employment and simply rely upon the supporting party to provide a standard of living for the dependent party comparable to that enjoyed during the marriage.

In considering the amount of any maintenance award, the court should ensure that the award to the dependent party should not be so great a portion of the supporting party's income so as to thwart the supporting party's

incentive to be productive and advance in the job market. The reasonableness of the dependent party's taking employment and the impact of the maintenance award on the supporting party's job incentive are factors which must be weighed along with the other statutory factors.

Because of the length of the Bahr marriage, the age of Mrs. Bahr, her absence from significant employment for many years, and her medical problems, Mrs. Bahr's failure to have or seek employment, particularly where the income of Dr. Bahr is so substantial, is of little consequence to the maintenance determination in this case.

The statutes recognize a difference between division of estate and award of maintenance payments. Sec. 247.255, Stats. 1977, directs that, in considering property division, "[t]he court shall presume that all other property . . . is to be *divided equally* between the parties." (Emphasis added.) That language is absent from sec. 247.26, Stats. 1977, which deals with maintenance. This distinction reflects a legislative recognition that property held by the parties at the termination of the marriage is presumed to have been acquired by their joint efforts. After the marriage is terminated, the parties are no longer considered partners, and the contribution toward the maintenance of a former spouse is to be treated under a basic concept of need by the dependent party and the corresponding ability to pay by the supporting party, with consideration of other supplementary factors.

Because there are so many variables to be considered by the trial court in reaching an equitable result, it is not possible for us to set forth any mechanical standards to fit every case. Therefore, for us to properly defer to the trial court's discretion, the court must illuminate its reasoning in reaching the award.

*Hartung* requires a reasoned decision producing a reasonable result based upon the facts of each case. It would

seem reasonable for the trial court to begin the maintenance evaluation with the proposition that the dependent partner may be entitled to 50 percent of the total earnings of both parties. This percentage may, as in the case of property division, be adjusted following reasoned consideration of the statutorily enumerated maintenance factors. We would stress, however, that while this starting point is important, it is not the determinative factor which controls the ultimate award. For, "[i]t is the equitableness of the result reached that must stand the test of fairness on review," and such a result requires a reasoned starting point adjusted to reflect thoughtful consideration of other important factors. *Lacey,* 45 Wis. 2d at 382.

We agree with the decision of the court of appeals insofar as it reverses and remands this case to the trial court for reconsideration of the maintenance award in view of the trial court's errors in calculating the property division. However, we determine that this reconsideration of maintenance must not be limited to the noted errors in the calculation of the property division. We disagree with the conclusion of the court of appeals that the maintenance award is not so inadequate as to constitute an abuse of discretion. Accordingly, because we find the maintenance award to be so unreasonably low as to constitute an abuse of discretion, we modify the decision of the court of appeals; order the trial court to reconsider the amount of the maintenance award without the limitation imposed by the court of appeals; and direct the trial court to set forth the reasoning producing its judgment.

*By the Court.*—The decision of the court of appeals is modified and, as modified, affirmed.

CECI, J., took no part.