STATE of Wisconsin, Plaintiff-Respondent,

v.

Ronald W. BOWSER, Defendant-Appellant.†

Court of Appeals

*No. 2008AP206–CR. Submitted on briefs September 8, 2008.
—Decided July 30, 2009.*

**2009 WI App 114**

(Also reported in 772 N.W.2d 666.)

† Petition to Review denied 12/14/09. Abrahamson, C.J. and Bradley, J., dissents.

221

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jefren E. Olsen*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Marguerite M. Moeller*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Higginbotham, P.J., Dykman and Lundsten, JJ.

¶ 1. HIGGINBOTHAM, P.J. This is a discovery case that arises in the context of a criminal prosecution for possession of child pornography. The dispositive issue on appeal is whether the circuit court properly exercised its discretion under WIS. STAT. § 971.23(6) (2007–08)[1] in granting the State's motion for a protective order, which allowed Bowser's defense team access

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

at a State facility to a computer hard drive allegedly containing child pornography evidence, but prohibited the defense from obtaining a copy of the hard drive.[2] We conclude, on the record before the circuit court, and in light of the serious harms associated with child pornography and the ease with which electronically-stored files are widely disseminated, that the court reasonably exercised its direction in granting the State's proposed protective order. We therefore affirm.

## BACKGROUND

¶ 2. Bowser was charged with seven counts of possession of child pornography. Bowser's attorneys filed and served on the State a demand for discovery and inspection, which included a demand pursuant to WIS. STAT. § 971.23(1)(g) for copies of all physical evidence within the State's possession or control that the State intended to introduce as evidence at trial. The State objected, arguing that WIS. STAT. § 971.23(1) does not require it to give a defendant "contraband."

¶ 3. An evidentiary hearing was held at which the circuit court denied Bowser's request for a copy of the hard drive. Instead, the court granted the State's request that discovery be conducted in accordance with a protocol established by the Wisconsin Department of Justice Criminal Division of Investigation (DCI) for

---

[2] The only issue presented by this interlocutory appeal is the circuit court's exercise of discretion under WIS. STAT. § 971.23(6). Bowser states in his brief that he is not pursuing constitutional arguments because, in part, he has "appealed the circuit court's order before trying to conduct discovery under its restrictions." Bowser concedes that "the record at this point does not demonstrate whether or not the restrictions on access have impaired [his] ability to prepare a defense or affected his due process rights."

discovery of child pornographic images. This protocol was established in response to the Adam Walsh Child Protection and Safety Act, Pub. L. No. 109–248, § 504, 120 Stat. 587, 629 (July 27, 2006), creating 18 U.S.C. § 3509(m), for purposes of federal prosecutions related to child pornography, which specifically prohibits law enforcement from providing copies of seized child pornography to any individual other than law enforcement officials.[3]

---

[3] At the evidentiary hearing, Special Agent David Matthews of the Wisconsin Department of Justice Division of Criminal Investigation explained the specifics of the protocol. The protocol is structured to provide access to defense counsel and/or defense experts seeking discovery of child pornographic material. DCI provides a private work space for defense experts, where they can bring in their own equipment, and "install their own tools and devices that they use in their forensic examination of evidence." DCI provides the experts with a copy of the forensic images that they have taken from the original hard drive. The experts are able to consult with defense counsel at the office. However, the work can only be done during normal business hours; an expert will not be able to access the work space during nights or weekends. No Internet access is permitted in the room, although telephone and electrical access is provided.

Prior to providing the copies of the forensic images, DCI requires the experts or other members of the defense team to sign a statement of understanding that they are not to make copies of the images. In addition, the defense team is not permitted to take any of the materials out of the government facility. After the examination and analysis has been completed, defense team members are required to "certify on a form that they have taken the appropriate steps to permanently wipe any contraband materials from their equipment." However, they may take copies of data showing the dates and times the computer and chat room sites were logged onto and other data that does not "resolve as a graphic sexual image of a child or a video."

¶ 4. The circuit court's central concern in impos-
ing the protocol was to prevent the further dissemina-
tion of the child pornographic images and thus to
prevent the re-victimization of the children captured in
those images. The court was particularly concerned
with the possibility that the alleged pornographic im-
ages would fall into the wrong hands and be broadly
disseminated on the Internet.

¶ 5. The court accepted the State's argument that
the most effective way to prevent the pornographic
material from being broadly disseminated was to re-
quire Bowser's defense team to examine and analyze
the evidence in accordance with the protocol developed
by DCI. The court concluded that the DCI protocol
balanced Bowser's interests in developing an adequate
defense with the need to prevent the dissemination of
the alleged child pornography and re-victimization of
the children portrayed in those images. We granted
Bowser's motion for leave to appeal a non-final order.

## DISCUSSION

¶ 6. We begin by establishing the points of agree-
ment between the State and Bowser. Bowser argues,
and the State agrees, that the disclosure and copying
requirement in WIS. STAT. § 971.23(1) does not exempt
contraband in general, or child pornography in particu-
lar. Both parties agree that the circuit court had the
discretion to issue a protective order under WIS. STAT.
§ 971.23(6) and that some type of protective order is
appropriate in this case. Finally, both the State and
Bowser agree that the State has the burden here to
establish good cause for an order under § 971.23(6)
limiting Bowser's access to the evidence. *See State v.
Boyd*, 158 P.3d 54, 59 (Wash. 2007) (under state discov-
ery statute similar to § 971.23(1) and (6), burden for

226

establishing the need for a protective order is on the party requesting such an order). The dispute here centers on whether the circuit court erroneously exercised its discretion in denying Bowser a copy of the hard drive and by granting the State's request that Bowser's defense team evaluate and analyze the evidence at a State facility and in accordance with the DCI protocol.

¶ 7. To resolve this dispute we must interpret and apply the criminal discovery statutes, WIS. STAT. § 971.23(1) and (6). Statutory interpretation is a question of law, which we review de novo. *State ex rel. Steldt v. McCaughtry*, 2000 WI App 176, ¶ 11, 238 Wis. 2d 393, 617 N.W.2d 201. Statutory interpretation "begins with the language of the statute." *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). The purpose of statutory interpretation is to give full effect to the policy choices of the legislature. *Id.*, ¶ 44.

¶ 8. WISCONSIN STAT. § 971.23(1) establishes the State's discovery obligations. Subsection (1) provides in part:

> WHAT A DISTRICT ATTORNEY MUST DISCLOSE TO A DEFENDANT. Upon demand, the district attorney shall, within a reasonable time before trial, disclose to the defendant or his or her attorney and permit the defendant or his or her attorney to inspect and copy or photograph all of the following materials and information, if it is within the possession, custody or control of the state[.]

Section 971.23(1)(g)[4] requires a prosecutor to disclose and permit the inspection, copying or photographing of physical evidence within its possession, custody or

---

[4] WISCONSIN STAT. § 971.23(1)(g) requires disclosure of "[a]ny physical evidence that the district attorney intends to offer in evidence at the trial."

control that the prosecutor intends to offer as evidence at trial. The right to discovery under this statute is subject to limitations a circuit court may impose by protective order. WIS. STAT. § 971.23(6). "Upon motion of a party, the court may at any time order that discovery, inspection or the listing of witnesses required under this section be denied, restricted or deferred, or make other appropriate orders . . . ." *Id.*

¶ 9. A circuit court's decision whether to grant a motion for a protective order under WIS. STAT. § 971.23(6) is reviewed under the erroneous exercise of discretion standard. *See State v. Beloit Concrete Stone Co.*, 103 Wis. 2d 506, 511, 309 N.W.2d 28 (Ct. App. 1981). A proper exercise of discretion requires that the court rest its decision on the relevant facts, apply the proper standard of law, and arrive at a reasonable conclusion using a demonstrated rational process. *Hegarty v. Beauchaine*, 2006 WI App 248, ¶ 37, 297 Wis. 2d 70, 727 N.W.2d 857.

¶ 10. Good cause must be established before a protective order may be issued pursuant to WIS. STAT. § 971.23(6). The burden for establishing good cause lies with the party seeking a protective order under the statute. *See* § 971.23(6); *cf. Boyd*, 159 P.3d at 59.

¶ 11. Bowser argues that the circuit court erroneously exercised its discretion in denying his request for a mirror image copy of the computer media in the State's custody. He argues that the court applied an incorrect standard of law in denying his discovery request by requiring Bowser to prove his need for the discovery material. Further, Bowser argues that the record does not support the court's reasons for denying his request. The State counters that the court properly

exercised its discretion in denying Bowser's request for a mirror image copy of the computer hard drive and properly required Bowser and his defense team to view and analyze the media in the DCI office with certain restrictions and in accordance with the DCI protocol. We address each issue in turn.

¶ 12. Bowser first argues that the circuit court did not apply the "good cause" standard required by WIS. STAT. § 971.23(6) for granting a motion to restrict discovery under the statute. According to Bowser, the court's expressed concern about the ease with which electronic pornographic images are disseminated via the Internet caused the court to ignore the good cause standard. We are not persuaded. The fact that pornographic images of children stored on a computer may now be shared with the world with a few clicks of a computer mouse is highly relevant to whether good cause exists to limit access to such evidence. We find nothing in the court's oral ruling to suggest that it did not apply the good cause standard.

¶ 13. We also reject Bowser's argument that the court placed the burden on Bowser to demonstrate that the DCI protocol did not meet his discovery needs. It is true that during hearings on this issue the court probed Bowser's counsel about why he believed the DCI protocol would hamper his discovery needs. However, during closing arguments at the evidentiary hearing, the prosecutor provided a reason for why the court should adopt the DCI protocol proposal, namely that it would reduce the risk of further dissemination of the pornographic material while still providing the defense complete access to the evidence. The court adopted these reasons as its bases for imposing the DCI protocol. We therefore

are satisfied that the court did not erroneously shift the burden of establishing good cause onto Bowser.

¶ 14. To the extent that Bowser is arguing that he has no obligation to demonstrate that the State's reasons for limiting access to the pornographic evidence are not supported by good cause, we disagree. Once the State made a showing of good cause, Bowser then had the burden to either rebut the State's reasons or demonstrate that his ability to mount an adequate defense would be hampered by the DCI protocol. As we explain below, Bowser has failed to carry his burden.

¶ 15. Attacking the State's rationale for the proposed protective order, Bowser maintains that the State presented no evidence to support its contention that providing a copy of the computer hard drive to Bowser's defense team would unnecessarily increase the potential risk that the evidence would be disseminated and that the DCI protocol provided greater protections than his proposed protective order. He maintains that there is no evidence that any member of his defense team would use the pornographic material for any purpose other than preparing and presenting his defense, and that the risk of further dissemination applies equally to members of the prosecution team.

¶ 16. We begin with the proposition that it is reasonable for a court to seek to minimize, within its discretion under WIS. STAT. § 971.23(1) and (6), the risk of distribution of the type of harmful material at issue here. The serious harms associated with the distribution of child pornography are well known. *See, e.g. United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007) (dissemination of child pornography fosters consumer demand that results in creation of more child pornography); *United States v. Sherman*, 268 F.3d 539, 547 (7th Cir. 2001) ("The possession, receipt and ship-

230

ping of child pornography directly victimizes the children portrayed by violating their right to privacy . . . ."); *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249 (2002) (child pornography constitutes a permanent record of a child's abuse, publication of which "cause[s] new injury to the child's reputation and emotional well-being."). As the circuit court noted, the advent of digital electronic storage and the Internet have dramatically increased the ease with which child pornography is created and disseminated. Once posted to the Internet, a pornographic image of a child may be further disseminated by file sharing applications, swaps between collectors, and reposting to other sites.

¶ 17. We agree with Bowser that there is no reason to think that the members of the defense team are any less trustworthy than the members of the prosecution team. Still, we disagree with Bowser that the State must produce evidence that one or more members of a defense team are not trustworthy to show good cause for an order that limits the risk of dissemination of the evidence. The circuit court could have reasonably concluded that the risk of improper use and dissemination increases when more persons possess copies of the child pornography—whether they are government employees or members of a defense team. It follows that it is reasonable to limit the number of persons who possess a copy of the illegal material.

¶ 18. Bowser complains that his ability to mount an adequate defense will be hampered if his defense team is not provided a copy of the hard drive. He asserts that requiring his expert to perform his examination of the hard drive at the DCI facility during normal business hours will place undue burdens on his expert and significantly increase the cost of the analysis. This contention, however, is not supported by the record.

231

Bowser's expert testified that he would be able to perform the necessary analysis of the evidence at the facility and in accordance with the DCI protocol, although it might require him to move most of his office to the DCI facility. Thus, although the expert will be inconvenienced, he did not testify that he would be unable to perform the necessary analysis.

¶ 19. Moreover, the circuit court determined that the DCI protocol would provide Bowser "generous" and "largely unfettered" access to the material, and that the "roadblocks and concerns raised by [Bowser] are, in effect, inconveniences, and not impediments to the process of discovery." To the extent these determinations were factual findings, we conclude that they are not clearly erroneous.

¶ 20. Regarding the expense issue, we agree with the proposition that added expense may in some circumstances impede a defense. *Cf. United States v. Knellinger*, 471 F. Supp. 2d 640, 647 (E.D. Va. 2007). Indeed, here, Bowser's expert testified that it may be more expensive for him to perform his analysis at the DCI office. However, Bowser has presented no evidence that the added expense here was so significant that it would hinder his defense.

██

¶ 21. We acknowledge that WIS. STAT. § 971.23(1) confers on defendants a broad right to pretrial discovery. Indeed, we have said that "[p]retrial discovery is nothing more than the right of the defendant to obtain access to evidence necessary to prepare his or her case for trial." *State v. Maday*, 179 Wis. 2d 346, 354, 507 N.W.2d 365 (Ct. App. 1993). Pretrial discovery promotes the fair and efficient prosecution of criminal cases by providing a level playing field between the accused and the State and by advancing the quest for truth at a fair

trial; discovery also provides a defendant with enough information to make an informed choice of whether to accept a plea agreement and serves to expedite the trial itself. *See id.* at 354–55; *also State v. Schaefer*, 2008 WI 25, ¶¶ 22–23, 308 Wis. 2d 279, 746 N.W.2d 457. However, the right to pretrial discovery is tempered by the circuit court's discretion under WIS. STAT. § 971.23(6) to deny, restrict, defer, "or make other appropriate orders" concerning discovery upon a showing of good cause.

¶ 22. This opinion should not be read as creating a rule that circuit courts should or must generally grant a prosecution request for limited access to computer child pornography evidence. Under the facts before us, the judge would also have acted reasonably in denying the prosecution request, particularly because the defense here presented a proposal outlining the reasonable steps it intended to take to secure the evidence. Rather, we hold that under the facts here the circuit court did not misuse its discretion.

¶ 23. Furthermore, we stress that whether a particular proposed protective order is appropriate is determined on a case-by-case basis. The result here may have been different if the defense had made a showing that its ability to mount an adequate defense would be hampered by the protective order.[5] Indeed, on remand

---

[5] In *United States v. Knellinger*, 471 F. Supp. 2d 640 (E.D. VA 2007), the district court granted the defendant's motion for a mirror-image copy of a computer hard drive allegedly containing child pornography after concluding that the government could not provide the defendant "an ample opportunity to inspect, view, and examine the child pornography" within the meaning of the Adam Walsh Child Protection and Safety Act, 18 US.C. § 3509(m)(2). There, the defendant's expert witnesses established that the costs to analyze the evidence would be

the defense is free to move once more to obtain a copy of the computer hard drive and support that motion with more specific evidence of how the protective order hampers its defense.[6]

## CONCLUSION

¶ 24. We conclude, based on the record before the circuit court, and in light of the serious harms associated with child pornography and the ease with which electronically-stored files are widely disseminated, that the court reasonably exercised its discretion in granting the State's proposed protective order, which required Bowser's defense team to inspect and analyze the data

---

excessive and that qualified experts could not reasonably be expected to agree to conduct the required analysis in light of the costs of transporting the equipment; the potential damage to their equipment caused by the moving, possibly rendering the equipment unreliable; the time it would take to move the equipment; and the impact on the expert's ability to render effective service to the defendant or to his attorney. *Id.* at 647–48.

[6] We also stress that this decision does not constitute an adoption of the DCI protocol for use in all cases involving alleged child pornography evidence. As we have explained, the DCI protocol is based on the Adam Walsh Act, which requires federal courts to deny "any request by the defendant to copy . . . any property or material that constitutes child pornography . . . so long as the Government makes the property or material reasonably available to the defendant." 18 U.S.C. § 3509(m). Wisconsin has no statutory corollary to the Act and has not adopted any part of the Act. Instead, an electronic storage device alleged to contain child pornography remains subject to the general discovery provisions of Wis. Stat. § 971.23(1) and (6), which permits the defendant to obtain a copy of such evidence unless the court determines that the State has shown good cause for a protective order.

at the DCI office in accordance with its protocol. We therefore affirm.

*By the Court.*—Order affirmed.

¶ 25 DYKMAN, J. (*dissenting*). The majority dresses up its adoption of the federal Adam Walsh Child Protection Act (AWCPA) in discretionary jurisprudence, not recognizing that this effectively creates a rule preventing defense attorneys from obtaining some of the very material the State will use in attempting to convict their clients.[7] This is an unusual step, as courts usually defer to legislatures when it comes to laws adopting or failing to adopt policy the state deems wise or unwise. The Wisconsin legislature has not adopted anything like the AWCPA, though it has had ample opportunity to do so.

¶ 26. "The court of appeals is an error-correcting court." *DeFever v. City of Waukesha*, 2007 WI App 266, ¶ 16, 306 Wis. 2d 766, 743 N.W.2d 848. We have no rule making authority. *See* WIS. STAT. § 751.12 (2007–08)[8] and Wis. Stat. ch. 752; *Mucek v. Nationwide Commc'ns, Inc.*, 2002 WI App 60, ¶ 69, 252 Wis. 2d 426, 643 N.W.2d 98 (Dykman, J., dissenting).

¶ 27. This is a review of a discretionary decision. We have reviewed many discretionary decisions, and the methodology is well known. "[T]he exercise of discretion is not the equivalent of unfettered decision-making." *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306

---

[7] The majority's claim that all this case is is only an affirmance of a discretionary determination fails to recognize the real world of criminal litigation. This is a stereotypical case. The facts are those of almost all child pornography cases. Why would future trial courts risk retrials when this case approves the method and rationale we will affirm?

[8] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

N.W.2d 16 (1981). As the supreme court noted in *Bahr v. Bahr*, 107 Wis. 2d 72, 77–78, 318 N.W.2d 391 (1982), the important part of a discretionary decision is more than the articulation of the decision. It extends to the explanation of the decision. *Id.* A discretionary decision must reach a decision by a process of logical reasoning. *Hartung*, 102 Wis. 2d at 66.

¶ 28. If any reason for a discretionary decision were acceptable, we would affirm all discretionary decisions for which some reason is given. Of course, that is not the test. For instance, had the majority explained that it was affirming the trial court's discretionary decision adopting the AWCPA because most of those convicted of sexual assault have blue eyes, it would be easy to see the problem. It is more difficult to see the problem with the majority's conclusion that if Bowser's attorneys and expert witness are given unfettered access to Bowser's computer, there will be an additional risk of dissemination of the prohibited material because that conclusion is correct, but unhelpful. Being correct does not mean that the majority has identified a reasoned or reasonable basis for the trial court's decision.

¶ 29. First, I question the majority's conclusion that there is a risk that Bowser's attorneys or expert would disseminate the child pornography. The attorneys and expert know that disseminating child pornography is a felony. They would be put out of business by a felony conviction. I believe that the increased risk is so small as to be insignificant.[9] But the majority's reasoning is also incorrect because the risk of more

[9] If the attorney and expert witness want to obtain the pornography and disseminate it, they could use the internet to do so even without receiving Bowser's hard drive.

people obtaining the pornography from the attorneys and expert is overwhelmed by the fact that there are 1,596,270,108 internet users in the world, an amount that has grown by 342.2% in the past eight years.[10] Each of them, as the majority recognizes, can obtain the forbidden material with a few clicks of a computer mouse. Majority, ¶ 12. The majority is mathematically correct that adding three or four people to one-and-one-half billion people poses an additional risk. But it is equally true that pouring a gallon of water into Lake Mendota will raise that lake's level, and increase the risk of flooding by the amount of rise. This may be judicial reasoning, but in the real world of logic and reality, increases such as those feared by the majority are ignored, or dismissed as foolish. Limiting Bowser's attorneys' and expert's access to the prohibited material will not make any difference to the possibility that someone will obtain the pornography and disseminate it to someone else.

¶ 30. The majority has another reason. It reasons that though restricting the defense team's access to the material creates additional hurdles to the defense, those hurdles don't amount to much. But reasoning that the problem isn't a big one begs the question. Why restrict access in the first place? The burden to allow the prosecution to limit access to evidence is, after all, on the prosecution, not the defense. The majority's second reason is not a reason at all, but depends on its other reasons. I have explained the fallacy of "three or four more is too dangerous."

[10] World Internet Usage Statistics, *http://www.internet world stats.com/stats.htm* (last visited July 28, 2009).

¶ 31. It is not reasonable that adding three or four to one-and-one-half billion makes any difference to anything. So, were I writing for the majority, I would reverse and remand to permit Bowser to have the discovery he has requested, but requiring that those given access agree to use the material only for Bowser's defense. But I am not writing for the majority, so I am limited to respectfully dissenting.