CROWN CASTLE USA, INC., Crown Castle Atlantic, LLC and Crown Castle GT Company, LLC, Plaintiffs-Respondents,

v.

ORION CONSTRUCTION GROUP, LLC, Defendant,

ORION LOGISTICS, LLC, Appellant.†

Court of Appeals

*No. 2009AP3029. Submitted on briefs November 9, 2010.*
*—Decided December 7, 2010.*

2011 WI App 9

(Also reported in 794 N.W.2d 272.)

† Petition For Review granted 4/12/11.

74

On behalf of the appellant, the cause was submitted on the briefs of *Charles D. Koehler* of *Herrling Clark Law Firm Ltd.*, Appleton.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Eric M. McLeod* and *Nathan L. Moenck* of *Michael Best & Friedrich LLP*, Madison.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. BRUNNER, J. Crown Castle USA, Inc., Crown Castle Atlantics, LLC, and Crown Castle GT Company, LLC (collectively, Crown Castle), hold a judgment against Orion Construction Group, LLC. In an effort to discover whether Orion Construction was concealing property subject to the judgment, Crown Castle sought and received an order requiring Orion Logistics, LLC, which shares common ownership with Orion Construction, to submit to a supplemental examination of its books and records pursuant to Wis. Stat. §§ 816.03 and 816.06.[1] Orion Logistics appeals that order.

¶ 2. We conclude circuit courts and court commissioners have authority under Wis. Stat. §§ 816.03 and 816.06 to require a third-party company sharing common ownership with a judgment debtor to submit to a supplemental examination. We further conclude the circuit court properly exercised its authority to order such an examination in this case. Accordingly, we affirm.

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

## BACKGROUND

¶ 3.   Crown Castle obtained a default judgment in Pennsylvania against Orion Construction, a Wisconsin company whose sole member is Douglas Larson.[2] Crown Castle then filed this action in Wisconsin to execute the foreign judgment. Orion Construction is the sole judgment debtor.

¶ 4.   On March 18, 2008, court commissioner Coughlin ordered Orion Construction to provide Crown Castle with all records pertaining to Orion Construction's assets and financial affairs:

> [You are ordered to provide by mail] the company's tax records for the years 2005, 2006 and 2007, and copies of all books, records and documents pertaining to the company's assets, financial affairs and transactions including, without limitation, all records, including equipment and inventory lists, any and all records relating to properties in which the company has an interest and any and all income related thereto, any and all information as to currently pending projects, and any and all information as to projects on which an account receivable balance is still outstanding.

Orion Construction was given approximately one month to respond.

¶ 5.   On September 26, 2008, Orion Construction provided Larson's personal tax returns from 2005, 2006 and 2007, and an accounting spreadsheet indicating a $210,831 account receivable from Crown Castle. A letter from Orion Construction's attorney advised that

---

[2] Orion Construction's primary business was the construction of towers providing service to cell phones. The default judgment was based on Crown Castle's claim that Orion Construction performed defective structural reinforcement work to cellular towers in Chicago.

there were no separate tax returns for Orion Construction because it was a single-member LLC. The letter further stated that Orion Construction had (1) no assets, and no books, records or documents pertaining to its assets; (2) no equipment or inventory; and (3) no property. A "Statement of Financial Condition" further indicated Orion Construction had (1) no outstanding loans; (2) no financial records; (3) no real or personal property, and none that had been transferred in the past five years; (4) no patents or copyrights; (5) no insurance policies; (6) no accounts receivable; and (7) less than $500 in a business checking account.

¶ 6. Believing Larson was concealing Orion Construction's assets, Crown Castle sought to examine the books and records of another of Larson's companies, Orion Logistics. On October 28, 2009, the circuit court expanded court commissioner Coughlin's order to include Orion Logistics, which now appeals.

## DISCUSSION

¶ 7. WISCONSIN STAT. §§ 816.03 and 816.06 set forth the procedure to locate property that can be applied to the satisfaction of judgment. *Courtyard Condo. Ass'n, Inc. v. Draper*, 2001 WI App 115, ¶ 13, 244 Wis. 2d 153, 629 N.W.2d 38. Pursuant to paragraph 816.03(1)(a), circuit courts have the authority, under certain circumstances, to order the judgment debtor to appear and answer concerning his or her property. Paragraph (1)(b) extends the same authority to court commissioners. Section 816.06 states that at the hearing, the judgment debtor "may be examined on oath and testimony on the part of either party may be offered."

¶ 8. Whether these statutes permit the court commissioner and circuit court to order a third-party com-

pany under common ownership with the judgment debtor to produce its books and disclose its finances is a matter of statutory interpretation. *Courtyard Condo.*, 244 Wis. 2d 153, ¶ 5. The interpretation of a statute is a question of law which this court reviews independently of the circuit court. *Id.* If the statute is unambiguous on its face, generally we do not look further than its plain language. *Id.*, ¶ 6. If, however, the statute is capable of being understood by reasonably well-informed persons in two or more senses, we may resort to extrinsic sources to aid our interpretation. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶¶ 47, 51, 271 Wis. 2d 633, 681 N.W.2d 110.

¶ 9.  In *Courtyard Condo.*, we determined that WIS. STAT. §§ 816.03 and 816.06 are ambiguous in light of the final phrase of section 816.06 permitting either party to offer testimony. *Courtyard Condo.*, 244 Wis. 2d 153, ¶ 9. There, we concluded that "[a] reasonable person is required to ask whether this phrase is limited to allowing both parties to examine the judgment debtor or broadly permits the calling and examination of third parties who might have information about the judgment debtor's property." *Id.* Our analysis of the statutes pertaining to the use of marital property to satisfy judgments led us to conclude that a judgment creditor may examine the spouse of a judgment debtor:  "Where, as in this case, the judgment debtor pleads ignorance when asked about marital property during a supplementary examination, the right of the judgment creditor to satisfy a judgment from marital property would be frustrated if the creditor could not examine the spouse." *Id.*, ¶ 15.

¶ 10.  Orion Logistics correctly notes that this case does not involve marital property or attempts to examine the judgment debtor's spouse. However, WIS. STAT.

§§ 816.03 and 816.16 remain ambiguous. In *Courtyard Condo.*, we relied on the marital property statutes to resolve that ambiguity. The question therefore becomes whether the absence of a marital relationship in this case requires us to reach a conclusion different than that in *Courtyard Condo.* It does not.

¶ 11. A judgment creditor has the right to apply any property of the judgment debtor or due to the judgment debtor, not exempt from execution, toward the satisfaction of the judgment. WIS. STAT. § 816.08. That includes marital property where a judgment is taken against one spouse. WIS. STAT. §§ 766.55(2)(b), 803.045(3). In *Courtyard Condo.*, we rejected the spouse's argument "that while a judgment creditor can satisfy a judgment from marital property, he or she cannot examine the spouse of the judgment debtor to determine the amount and location of the marital property[,]" concluding it defied "common sense." *Courtyard Condo.*, 244 Wis. 2d 153, ¶ 14. "Without examining the spouse of the judgment debtor, the judgment creditor would lack the information needed to proceed against the spouse . . . to reach marital property." *Id.*, ¶ 15. The implicit purpose of our *Courtyard Condo.* holding was to prevent a judgment debtor from insulating marital property from a judgment creditor by transferring it to his or her spouse.

¶ 12. The same rationale applies here. Property not wholly exempt from execution may be subject to a fraudulent transfer action under WIS. STAT. ch. 242 to set aside the transfer. WIS. STAT. § 815.18(10); *see also* WIS. STAT. §§ 242.04–242.07. Property transfers between a judgment debtor and related business entities present the same risk of fraud as those between spouses. Examination of the alleged third-party recipi-

80

ent may be the only method available to a judgment creditor to ascertain whether a fraudulent transfer has occurred.

¶ 13. Our supreme court adopted a form of this rationale long ago. In a case involving a judgment debtor's refusal to respond to supplemental examination about the profitability of a corporation in which he held an interest, the court noted that a supplemental examination must provide an effective remedy:

> The order and scope of the examination of a judgment debtor in a proceeding supplementary to execution are largely in the discretion of the judge or commissioner before whom such examination is being taken. This is necessarily so, because, if the debtor has concealed property which is sought to be discovered, he is called to testify against his supposed interest, and will always give his testimony reluctantly. *Unless a comprehensive and searching examination be allowed, an artful debtor might defeat the discovery sought.* To apply to such an examination the strict technical rules governing the examination of a witness on the trial of a cause, or even the less strict rules applicable to a cross-examination, which it more nearly resembles, would be to impair greatly the efficiency and usefulness of the remedy intended to be given by the proceeding, and, in many cases, to destroy it entirely.

*Heilbronner v. Levy*, 64 Wis. 636, 637–38, 26 N.W. 113 (1885) (emphasis added). We conclude the circuit court had authority to require Orion Logistics to submit to a supplemental examination.

¶ 14. The remaining question is whether the circuit court properly exercised its discretion to order Orion Logistics to submit to a supplemental examina-

tion. We will affirm if the circuit court considered the relevant facts, applied a proper standard of law, and used a demonstrated rational process to arrive at a reasonable conclusion. *State v. Bowser*, 2009 WI App 114, ¶ 9, 321 Wis. 2d 221, 772 N.W.2d 666. Here, Larson's tax returns indicate he has complete ownership and control over both Orion Construction and Orion Logistics. Those same returns indicate Orion Construction generated only $187,680 in gross receipts in 2007 after generating millions in sales in 2005 and 2006. Conversely, Orion Logistics' only return indicates it generated over $15 million in gross receipts in 2007. Based on this evidence, the circuit court properly concluded that the proposed discovery "may lead to relevant evidence in the collection of this judgment."

*By the Court.*—Order affirmed.